**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Grand Canyon Trust, | ) | No. CV-07-8164 PCT-DGC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| U.S. Bureau of Reclamation, et al., | ) | |
| Defendants. | ) | |

Plaintiff has filed a Motion for Reconsideration. Dkt. #124. At the Court's request, Defendants filed a response. Dkt. #126. The Court will deny the motion.

**I.     Legal Standards.**

Motions for reconsideration are disfavored and granted only in rare circumstances. *See Ross v. Arpaio*, No. CV 05-4177-PHX-MHM (ECV), 2008 WL 1776502, at *2 (D. Ariz. April 15, 2008) (citing *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995)). Mere disagreement with an order is an insufficient basis for reconsideration. *See id.* (citing *Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988)). Nor should reconsideration be used to make new arguments or to ask the Court to rethink its analysis. *See id.* (citing *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998)); *see also N.W. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988).

Courts in this district have identified four circumstances where a motion for reconsideration will be granted: (1) the moving party has discovered material differences in fact or law from those presented to the Court at the time of its initial decision, and the party

could not previously have known of the factual or legal differences through the exercise of reasonable diligence; (2) material factual events have occurred since the Court's initial decision; (3) there has been a material change in the law since the Court's initial decision; or (4) the moving party makes a convincing showing that the Court failed to consider material facts that were presented to the Court at the time of its initial decision. *See, e.g.*, *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003).

## II.     Claim 4 – Agency Action.

Plaintiff contends that the Court erred when it decided that the annual operating plans ("AOPs") for Glen Canyon Dam are not "agency action" within the meaning of 16 U.S.C. § 1536(c)(1). Plaintiff identifies two alleged errors: the Court's conclusion that the 1996 ROD selected a MLFF system for operating Glen Canyon Dam, and the Court's conclusion that the 2008 AOP makes projections, not monthly flow decisions.

### A.     The 1996 ROD.

Plaintiff asserts that "the 1996 ROD itself makes clear that SASF is permitted and not prohibited." Dkt. #124 at 4. This assertion, however, is not followed by any citation to the record. And the citations that follow in the ensuing sentences of Plaintiff's motion do not support this proposition.

For example, Plaintiff argues that the 1996 ROD must have included the SASF option because the 1994 biological opinion set forth a reasonable and prudent alternative that called for SASF. This argument is not supported by the language of the ROD or the 1995 FEIS that it accepted. *See* Dkt. #123 at 18-21. Plaintiff then cites to a statement in which the Bureau purportedly agreed that the SASF system was appropriate. Dkt. #124 at 4. The cited statement, however, makes no mention of SASF, but rather provides that the Bureau has the authority to engage in "experimental steady flows" through the adaptive management program. *See* Dkt. #22-5 (Ex. 5 at G-8 - G-9). Experimental steady flows are not the same as SASF. Plaintiff also cites to a 2008 letter from the National Park Service concerning 2008 experimental flows, a document that clearly does not constitute an admission by the Bureau that the 1996 ROD included the flexibility to implement SASF. *See* Dkt. #91-4 (Ex. 23 at

- 2 -

3). Similarly, Plaintiff contends that the Bureau's adoption of experimental steady flows in 2008 constitutes an admission that the 1996 ROD permits SASF. The document cited by Plaintiff, however, specifically states that the Bureau's "proposed action consists of continued implementation of Modified Low Fluctuating Flows selected in the 1996 record of decision (Interior 1996) with the added elements of identified experimental dam operations for the five-year experimental period." Dkt. #91-4 (Ex. 24 at 3 n.3).[1]

Plaintiff has provided no basis for concluding that the Court erred when it found that the 1996 ROD and the Operating Criteria adopted a MLFF system. The Court acted correctly when it concluded that the Bureau does not possess discretion in the AOP process to adopt the SASF regime – the change Plaintiff seeks to benefit the humpback chub. Because the Bureau does not have discretion to make the change that would inure to the benefit of the endangered species, the AOP does not constitute agency action. Dkt. #123 at 22-25.

**B.     2008 AOP.**

Plaintiff's motion restates arguments made previously about the nature of the 2008 AOP. The Court understands that Plaintiff disagrees with its conclusion that AOP merely projects monthly releases from the Dam, but as already noted, mere disagreement with an order is an insufficient basis for reconsideration. *Ross*, 2008 WL 1776502, at *2 (citing *Leong*, 689 F. Supp. at 1573).

Moreover, the Court's decision is correct. As the 2008 AOP itself explains:

> The AOP provides guidance regarding reservoir storage and release conditions during the upcoming year, based upon congressionally mandated and authorized storage, release, and delivery criteria and determinations. After meeting these criteria and determinations, specific reservoir releases may be modified within these requirements as forecasted inflows change in response to climate variability and to provide benefits coincident to the projects'

---

[1] Plaintiff argues that the Bureau's adoption of experimental steady flows shows that the Bureau retains the discretion to adopt the SASF system. But the MLFF system was designed "to provide special high steady flows of short duration," also referred to as "beach/habitat building flows," as well as experimental flows through the adaptive management program. Dkt. #122-2 at 16; Dkt. #27, Ex. 3 at G-3. Implementation of these short-term flows is not the same as adopting SASF. Dkt. #123 at 18-20.

multiple purpose.

2008 AOP at 29. The predictive nature of the AOPs is confirmed by the fact that actual releases from the Dam have differed from those projected in the AOP for seven out of the last twelve years. Dkt. #126 at 11.

Plaintiff alternatively suggests that the Court should defer a decision on claim 4 until the merits of claims 1-3 have been resolved. Plaintiff did not make this argument in its initial motion. As noted above, motions for reconsideration are not the place for parties to make entirely new assertions.

### III.    Claim 5 – Major Federal Action.

Plaintiff restates its arguments concerning *Upper Snake River Chapter of Trout Unlimited v. Hodel*, 921 F.2d 232 (9th Cir. 1990). The Court has already addressed these arguments. Dkt. #123 at 26-28. Plaintiff provides no basis for reconsideration.[2]

**IT IS ORDERED:** Plaintiff's motion for reconsideration (Dkt. #124) is **denied**.

DATED this 11th day of November, 2008.

_____
David G. Campbell
United States District Judge

---

[2] Plaintiff also asks the Court to "correct its understanding of Claims 6-8, which are fundamentally misstated on page 4" of the Court's previous order. Dkt. #124 at 2. Plaintiff does not explain how the claims are misstated. The Court has not yet addressed claims 6-8 and will have a full opportunity to consider them and correct any misunderstanding when it receives the parties' briefing on these claims.

- 4 -