**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon Trust, | No. CV-07-8164-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| U.S. Bureau of Reclamation, et al., | |
| Defendants. | |

Plaintiff Grand Canyon Trust seeks leave to file a second supplemental complaint. Dkt. #190. The complaint would add Claims 9, 10, and 11 to this case. Defendants do not oppose the addition of Claims 9 and 11, but they do oppose the addition of Claim 10, which alleges that the Incidental Take Statement ("ITS") in the 2009 Supplemental Biological Opinion issued by the Fish & Wildlife Service ("FWS") violates the National Environmental Policy Act ("NEPA"). Dkt. #191. Plaintiff's motion is fully briefed. *See* Dkt. ##190, 191, 192, 193. For the reasons that follow, the Court will grant the motion.

As both parties recognize, the filing of a supplemental complaint under Rule 15(d) is to be liberally granted, particularly when it will facilitate the resolution of related legal and factual issues in a single proceeding. *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). The Court has broad discretion to permit a supplemental complaint. *Id*.

Defendants argue that Plaintiff unduly delayed the assertion of Claim 10 – that it should have been asserted in response to FWS's 2008 Biological Opinion and the 2008 ITS. Because of this delay, Defendants allege that they would be unduly prejudiced by the untimely addition of the claim to this case. Defendants also argue that the addition of Claim

10 would be futile because the Bureau of Reclamation, not FWS, is the agency required to comply with NEPA. Dkt. #191.

Defendants' first two arguments are premised on the assertion that the 2009 ITS is virtually identical to the 2008 ITS, and that Claim 10 therefore could have been asserted earlier. Defendants assert that each ITS considers the same sources for the taking of humpback chub, and that each authorizes the same level of take. The Court does not agree.

The 2008 ITS considered take that would result from the 2008 Experimental Plan, specifically, the high flow test and annual two-month steady flows that would occur under the plan. Dkt. #136, Ex. 11 at 56. The 2008 ITS found that quantifying the take from these aspects of the 2008 Experimental Plan was not possible, and established the following surrogate measure: "As a surrogate measure of take, we will consider anticipated take to be exceeded if the proposed action results in detection of more than 20 humpback chub mortalities during the high flow test, attributable to the high flow test." *Id*. at 57.

The 2009 ITS focuses on the effects of the Modified Low Fluctuating Flow ("MLFF") method of dam operations. Indeed, the Court's order requiring that the 2009 Supplemental Biological Opinion be completed made clear that FWS did not need to address the high flow or two-month steady flows of the 2008 Experimental Plan. *See Grand Canyon Trust v. U.S. Bureau of Reclamation*, 623 F. Supp. 2d 1015, 1035, 1043 (D.Ariz. 2009). Consistent with this focus on MLFF, the 2009 ITS assessed "[t]he level of take that could occur from the MLFF[.]" Dkt. #180-1 at 87. The 2009 ITS recognized that chub take could occur "from the cooling effect of the MLFF on the mainstream and especially near shore habitats and from the dewatering of near shore habitats due to daily fluctuations[.]" *Id*. The 2009 ITS noted that "these effects can cause direct mortality from cold shock or stranding, as well as indirect mortality from increased predation rates by nonnative fish predators." *Id*. The 2009 ITS concluded that "the anticipated level of take of humpback chub is unquantifiable." *Id*. Rather than adopting the 20-chub measure of the 2008 ITS, however, the 2009 ITS established a different measure: "We will consider take to have been exceeded if the conditions of the trigger are met." *Id*. The "trigger" referred to is the consultation trigger

established in the 2009 Supplemental Biological Opinion, requiring that Reclamation resume consultation with FWS if the humpback chub population "drops below 3,500 adult fish within the 95 percent confidence interval." *Id*. at 17.

Although the 3,500-fish consultation trigger was included in the 2008 Biological Opinion, it was not used to establish the acceptable measure of take in the 2008 ITS. Rather, as noted above, the 2008 ITS stated that the permitted level of take would be exceeded if 20 humpback chub died as a result of the high flows permitted in the 2008 Experimental Plan.

Because the 2008 ITS and the 2009 ITS differ in significant respects, the Court concludes that Claim 10 challenges a new ITS, not the ITS that was issued in 2008. The 2009 ITS was not issued until October 29, 2009. Plaintiff promptly notified Defendants of its intent to assert Claim 10. Plaintiff did not unduly delay the assertion of this claim. The Court similarly concludes that Defendants will not be prejudiced by the assertion of a claim that arose only recently.

Nor will the Court deny the proposed supplemental complaint on the basis of futility. Defendants' futility argument goes to the merits of Claim 10. The merits will be more accurately addressed by the Court in the context of full merits briefing.

**IT IS ORDERED:**

1. Plaintiff's motion for leave to file second supplemental complaint (Dkt. #190) is **granted**.
2. Plaintiff shall file the second supplemental complaint on **January 27, 2010**. Defendants shall respond to the complaint on or before **February 10, 2010**.

DATED this 7th day of January, 2010.

_____
David G. Campbell
United States District Judge