**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon Trust,<br><br>Plaintiff,<br><br>vs.<br><br>United States Bureau of Reclamation, et al.,<br><br>Defendants. | No. CV07-8164-PHX-DGC<br><br>**ORDER** |

Plaintiff Grand Canyon Trust has filed a motion for an injunction pending appeal. Doc. 291-292. Federal Defendants have filed a response (Doc. 295), Defendant-Intervenors have joined the response (Doc. 296), and the Trust has filed a reply (Doc. 301). No party has requested oral argument. The Court will deny the motion.

**A.     Legal standard.**

While an appeal is pending from an order denying an injunction, the court may "grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c). This rule "codifies the inherent power of a court 'to preserve the status quo where in its sound discretion, the court deems the circumstances so justify[.]'" *Christian Science Reading Room v. City & County of S.F.*, 784 F.2d 1010, 1017 (9th Cir. 1986) (citation omitted). A party may obtain an injunction under Rule 62(c) by showing that it is likely to succeed on appeal, that it is likely to suffer irreparable harm in the absence of injunctive relief, that the balance of hardships tips in its favor, and that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008). The test includes a sliding scale. If

the movant shows that the balance of hardships will tip sharply in its favor, it need not make as strong a showing of the likelihood of success on appeal – the existence of serious questions will suffice. *See Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1049-53 (9th Cir. 2010); *see also Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) (standard for obtaining a preliminary injunction applies to motions for injunctions pending appeal).

### B. The Trust has not challenged the actions for which it seeks relief.

The Trust states that its motion is based on Claim 3 of its Third Supplemental Complaint. Doc. 292. Claim 3 alleges that Reclamation's operation of Glen Canyon Dam results in illegal take of the humpback chub under section 9 of the Endangered Species Act ("ESA"). Specifically, Claim 3 alleges that releasing water from the Dam under a Modified Low Fluctuating Flow regime causes take, and that the incidental take statement in the 1994 Biological Opinion is not valid. Doc. 264 ¶¶ 79-82. Claim 3 does not assert the wrong addressed in the Trust's motion for an injunction pending appeal – that Reclamation's failure to implement nonnative fish control during 2011 is resulting in take of the endangered Humpback Chub.

Even if Claim 3 could be read broadly enough to encompass this alleged wrong, the wrong has never been addressed by this Court and therefore is not part of the Trust's appeal. The history of the case makes this point clear.

The Dam currently is being operated under a 2008 Experimental Plan that has been discussed at length in the Court's previous orders. One of the chub conservation measures under the plan is the mechanical removal of rainbow trout – a nonnative to the Colorado River that preys on the humpback chub. Due to concerns expressed by the Zuni Tribe that killing of trout near the mouth of the Little Colorado River desecrated one of their most sacred religious sites, Reclamation cancelled the mechanical trout removal trips scheduled for May and June of 2010. Doc. 222. This cancellation resulted in renewed consultation between the U.S. Fish and Wildlife Service ("FWS") and Reclamation, and in November of 2010 FWS issued a new Biological Opinion and ITS that specifically addressed the cancellation of the 2010 trout removal. Doc. 274.

In response to this new Biological Opinion and ITS, the Trust moved to withdraw a motion to vacate and motion for summary judgment it had filed in October of 2010 on remaining claims in the case. Doc. 275. The Trust withdrew these motions so it could "reassert Claim 3 and amend Claims 12 and 13 . . . to address the November 9, 2010 Biological Opinion and Incidental Take Statement." *Id.* In other words, the Trust wanted to challenge FWS' conclusion that cancellation of 2010 trout removal did not result in illegal take of the chub. The Court granted the motion to withdraw (Doc. 282), but the Trust never supplemented its complaint to assert this new claim. During a telephone conference in February of 2011 (Doc. 285), the Trust changed its mind in light of a discussion concerning the future schedule of this case. Federal Defendants explained during the conference call that FWS and Reclamation were in consultation regarding trout control for the years after 2010, and that this consultation likely would produce additional agency documents in May or June of this year. Rather than waiting to file additional claims once these new documents were produced – in other words, rather than waiting to challenge the 2011 policy on trout removal – the Trust asked the Court to complete this case by ruling on the motion to vacate and motion for summary judgment that had been filed in October of 2011 and later withdrawn. After considering this suggestion, the Court agreed. Doc. 286. The Court ruled on these motions on March 30, 2011, entering final judgment in favor of Defendants. Doc. 287.

Thus, the Trust elected *not* to challenge the Biological Opinion and ITS issued in November of 2010 concerning the 2010 suspension of trout removal, and elected *not* to wait for FWS and Reclamation's current policy on trout removal so that it could include that policy in a supplemental complaint. Doc. 287 at 17. Because these issues were not raised in this Court, they cannot be raised on appeal and cannot form the basis for an injunction pending appeal.

**C.     The Trust has not shown it is entitled to an injunction.**

The Trust cannot show it is likely to prevail on appeal with respect to the 2010 Biological Opinion and ITS that it failed to challenge in this Court. *See* Doc. 287 at 5 &

n. 2. Perhaps for this reason, the Trust's motion for an injunction pending appeal focuses on the absence of trout removal in 2011. *See* Doc. 292 at 2 ("*at this time* Reclamation is not controlling nonnative trout" (emphasis added)); Doc.301 at 6 ("Reclamation has no intention to avoid unlawful take in the summer of 2011").

The Federal Defendants' response to the motion includes a declaration by Larry Walkoviak, Regional Director of Reclamation's Upper Colorado Region. Doc. 295-1. The declaration explains that Reclamation has been involved in an extensive and detailed analysis of trout removal measures that has involved consultations with several Indian tribes and other Colorado River stakeholders, public hearings, scientific analyses, a draft Environmental Assessment, and consultation with FWS. As Mr. Walkoviak explains: "The additional time taken by Reclamation, the USGS, other federal agencies and stakeholders is not a reflection of inactivity, a failure to prioritize the project, or a failure to appreciate the importance of completing the decision-making process in 2011 with respect to non-native fish control measures. Instead, Reclamation has been diligently working to complete the process and address stakeholder input[.]" *Id.* at 5.

Mr. Walkoviak explains that the proposed action being evaluated by Reclamation includes expanding the period for nonnative fish control measures to ten years (not just through completion of the 2008 Experimental Plan in 2012), up to six trips per year to remove nonnative fish from the Lower Colorado River reach if the adult chub population drops below 7,000 fish, up to ten trips per year to remove nonnative fish from the Colorado River reach extending from the Paria River to Badger Creek (above the confluence with the Lower Colorado River), researching whether Lees Ferry is the source of the trout that prey on the chub at the Lower Colorado River confluence (through tracking tags and monitoring), researching whether removal between the Paria River and Badger Creek can sufficiently control the trout population, increasing the marking and monitoring of young humpback chub to more precisely determine the effect of trout predation on the chub, and developing tests to determine whether flow releases from the Dam could be used to control the trout population. *Id.* at 9-10. The plan includes

monitoring activities and tests of live trout removal this year. *Id.* at 11-12.

In reply, the Trust argues that the Walkoviak declaration constitutes a statement of future plans that cannot satisfy the ESA. The Trust also argues that the complexity of a problem does not excuse ESA compliance. But the Trust does not dispute that Reclamation is undertaking a substantial and detailed effort to deal with the issue of nonnative fish and to permit nonnative fish control while accommodating the interest of Native Americans.

The Trust's reply also makes various arguments about the current state of affairs on the river – arguments that were never made as part of the summary judgment briefing and that cannot be raised on appeal. Doc. 301 at 2-7. Among these arguments, the Trust contends that Reclamation now views nonnative fish control as unnecessary. *Id.* at 5. The declaration of Mr. Walkoviak proves otherwise. Reclamation's detailed efforts seek to *accomplish* nonnative fish control while accommodating concerns of Native Americans that killing of trout should not occur in their sacred areas. Doc, 295-1.

For several reasons, the Court concludes that the Trust arguments regarding the lack of nonnative fish removal in 2011 do not make the showing required for an injunction pending appeal.

First, as already noted, because the Trust did not raise most of the 2011 arguments during the summary judgment briefing or in a supplemental complaint, the Trust cannot raise them on appeal. The Trust therefore is not likely to prevail on appeal, or raise serious questions on appeal, with respect to these arguments.

Second, Reclamation has not been inactive on the issue of nonnative fish control during 2011. The declaration of Mr. Walkoviak shows that Reclamation is working diligently on this issue in conjunction with numerous stakeholders, and will be issuing an Environmental Assessment and ten-year plan for nonnative fish control during 2011.

Third, the Court cannot conclude that the Trust's proposed injunction is in the public interest. The Trust seeks a broad and vague injunction: "Defendant U.S. Bureau of Reclamation shall avoid taking humpback chub in violation of section 9 of the

Endangered Species Act, 16 U.S.C. § 1538(a)(1)(B), by implementing the conservation measure of nonnative control." Doc. 291-1. Such an injunction would provide little guidance to Reclamation. Mr. Walkoviak's declaration states that Reclamation is not aware of steps it could take to accomplish this objective beyond those already are underway. To the extent such an order would mean that Reclamation must cut short the detailed and careful analysis and consultation currently under way with respect to nonnative fish control, ignoring concerns expressed by Native Americans and the input provided by other agencies and interested parties, the Court cannot conclude that such an order would be in the public interest. A deliberative but efficient process that includes all Colorado River stakeholders, as well as careful research and monitoring, is more consistent with the public interest.

**IT IS ORDERED** that the Trust's motion for injunction pending appeal (Doc. 291) is **denied**.

Dated this 27th day of July, 2011.

*David G. Campbell*
David G. Campbell
United States District Judge